IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. **3:24-CR-270-L** |
| § | |
| GADIEL GONZALEZ § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Gadiel Gonzalez's ("Defendant" or "Mr. Gonzalez") Motion to Dismiss Counts One and Two of the Indictment ("Motion") (Doc. 20), filed on February 25, 2025. Defendant contends that: (1) 18 U.S.C. § 922(g)(1) violates the Commerce Clause of the United States Constitution and (2) § 922(g)(1) is unconstitutional on its face and as applied to him. Def.'s Mot. 1. The Government opposes the Motion. Doc. 23. After careful review of the Motion, Government's response, and applicable law, the court **denies** Defendant's Motion for the reasons herein explained.

I.  Background

On June 25, 2024, the Government filed a two-count Indictment (Doc. 1) against Mr. Gonzalez that charged him with knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, while knowingly possessing a firearm in and affecting interstate and foreign commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

In relation to § 922(g)(1), Mr. Gonzalez has three felonies and several criminal misdemeanors. In 2019, the State of Texas convicted Mr. Gonzalez for manufacturing and delivery of a controlled substance, cocaine. Def.'s Mot. 10. The State placed Mr. Gonzalez on bond for four felony offenses—unlawful possession of body armor by a felon, two counts of unlawful possession

Memorandum Opinion and Order – Page 1

of a firearm by a felon (more than 15 firearms seized in total), and manufacturing and delivery of a controlled substance. Gov.'s Resp. 1. Beyond his pending cases, he has two convictions for possession of a controlled substance and a conviction for Assault Caus[ing] Bodily Injury—Family Violence, a Class A misdemeanor. Gov.'s Resp. 1.; *see also* Tex. Pen. Code § 22.01(a)(1).

## II.     Legal Standard

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A court may grant a motion to dismiss an indictment if the defect is essentially a question of law. *United States v. Banks*, 339 F.3d 267, 269 (5th Cir. 2003). Motions to dismiss that test the interpretation of a statute are such questions of law that are proper for the court to review. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) ("The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper.") (citation omitted).

Defendant contends that § 922(g)(1) is unconstitutional on its face and as applied to him. Litigants are permitted to raise both "as applied" and "facial" challenges, but the "lawfulness of the particular application of the law should ordinarily be decided first." *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (citation omitted). "Once a case is brought," however, "no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010) (citation omitted).

"As applied" challenges require the court to determine whether the act may constitutionally be applied to some and unconstitutionally be applied to others. *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973). In a facial challenge, a defendant must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This challenge is the most difficult to mount successfully. *Id*. To prevail, the Government must establish that the challenged law "impose[s] . . . a burden on the right of armed self-defense" that is comparable to a burden imposed by a regulation recognized in history. *New York State Rifle & Pistol Ass'n Inc. v. Bruen,* 597 U.S. 1, 3 (2022).

### III.  Legal Framework

Section 922(g)(1) provides as follows:

> It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition [that] has been shipped or transported in interstate or foreign commerce.

The Second Amendment to the United States Constitution provides: "A well[-]regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The court now sets forth the legal framework and analyzes the constitutional inquiries for those purposes.

In *District of Columbia v. Heller*, the Supreme Court ruled that self-defense is the "central component of the [Second Amendment] right itself." 554 U.S. 570, 599 (2010). Nonetheless, to ensure public welfare and safety, the Court emphasized that the operative clause, "to keep and bear arms," is not unlimited. *Id*. at 595, 626. The opinion stressed that "nothing . . . should be taken to cast doubt on the long-standing prohibition on the possession of firearms by *felons* . . . . " *Id*. at

626. Therefore, the Court held that the Second Amendment protected the people[']s right to keep and bear arms" and, thereby, affirmed the Court of Appeals that a Washington, D.C. law banning a citizen's possession of handguns in the home was unconstitutional. *Id*. at 635-636.

In *McDonald v. City of Chicago, Illinois*, the Court incorporated the Second Amendment through the Due Process Clause of the Fourteenth Amendment. 561 U.S. 742 (2010). "[T]he Court further clarified that the right to keep and bear arms [is] among those fundamental rights necessary to our system of *ordered* liberty." *Id*. at 778 (emphasis added). The Court struck down city ordinances that banned handguns and held that the Second and Fourteenth Amendment "applies equally to the Federal Government and the States." *Id*. at 791.

The Supreme Court in *Bruen* further expanded and held that the Second and Fourteenth Amendment safeguards "the right of an *ordinary*, *law-abiding* citizen" to carry a handgun for self-defense inside the home, as well as outside the home. 597 U.S. at 9 (emphasis added). In its rationale, the Court noted that "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Id*. at 17. The Court, however, *"*declined to adopt" the means-end scrutiny approach and, therefore, discarded it as "one step too many." *Id*. at 17, 19. Instead, it reinforced that "text and history" serve as the appropriate test for firearm regulations under the Second Amendment. *See id*. at 22-24 (explaining why *Heller* refrained from engaging in means-end scrutiny).

The Supreme Court reiterated that step one of the framework "beg[ins] with a 'textual analysis' of the Second Amendment's language." *Id*. at 20 (alteration in original) (citing *Heller*, 554 U.S. at 576-78). The analysis inquires whether the regulation covers the "presumptively protected" conduct within the purview of the Second Amendment's "plain text." *Id.* at 24. From there, step two requires "the [G]overnment [to] then justify the [modern] regulation by

demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24 (alteration in original). Once both prongs are satisfied, "only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

The revised framework under *Bruen* is nuanced; the appropriate historical analogue requires three considerations. The Court explained the first consideration as follows:

> [w]hen confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy—a commonplace task for any lawyer or judge. Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'

*Id*. at 28-29 (citing C. Sunstein, On Analogical Reasoning, 106 HARV. L. REV. 741, 773 (1993)). The Court declined to enumerate all the central components that are relevant to a Second Amendment analysis. *Id*. at 29. Instead, the Court settled on an analysis that evaluated "at least two metrics: *how* and *why* the regulations[,][ modern and in history,] burden a law-abiding citizen's right to armed self-defense." *Id*. (emphasis added).

The second consideration evaluated the historical periods that the Government proffered to substantiate its historical analogue and argue the constitutionality of the statute. New York submitted a "variety of historical sources," which the Court categorized in periods as "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." *Id*. at 34. The Court ruled that the periods were necessary because "not all history is created equal." *Id*. More specifically, the court ruled that "[n]one of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent *law-abiding citizens* with *ordinary self-defense needs* from carrying arms in public for that purpose." *Id*. at 60,

71 (emphasis added). After reviewing these "periods" in comparison to New York's firearm prohibition, the Government had not convinced the Court that there was a tradition of broadly prohibiting the use of handguns in public. The Court reversed the lower court and remanded it for further proceedings, given that the regulation violated the Fourteenth Amendment. *Id*. at 71.

The Supreme Court in *Rahimi* held that Title 18 U.S.C. § 922(g)(8) is constitutional, and "conclude[d] only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 602 U.S. at 702. The Court's review of founding-era law—surety and going armed laws—supported "barring people from misusing weapons to harm or menace others." *Id.* at 693. Likewise, § 922(g)(8) permits disarmament "to mitigate demonstrated threats of physical violence." *Id.* at 698. Moreover, the Court stressed that "a [C]hallenged [firearm] regulation does not have to match its historical precursors precisely, 'it still may be analogous enough to pass constitutional muster.' " *Id.* at 692. (citing *Bruen*, 597 U.S. at 30) Thus, history, traditions, and "common sense" in the modern context supported disarming threatening individuals. *Id.* at 698. The Court reversed and remanded, and, in doing so, ruled that § 922(g)(8) "fits neatly within the tradition the surety laws and going armed laws represent" *Id.* at 698.

The Fifth Circuit addressed § 922(g)(1) in *United States v. Diaz*. 116 F.4th 458 (5th Cir. 2024). On appeal, the issue before the panel was whether "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [the defendant's predicate offenses]," which included a predicate offense of "possessing a firearm as a felon." *Id.* at 467 (listing the defendant's prior offenses but deciding that his previous felonies before the indictment were the only relevant criminal convictions). In its review of the Government's historical analogue, the court ruled that its composition of "colonial-era laws" authorized capital punishment and estate

forfeiture as consequences for serious crimes. *See id.* at 468. Thus, the Fifth Circuit held that permanent disarmament pursuant to § 922(g)(1) corresponds with the Nation's historical tradition. *Id.* at 471.

Therefore, this Memorandum Opinion and Order focuses on whether the Government can justify that § 922(g)(1) disqualifies Mr. Gonzalez from the right to possess a firearm as a felon. *Id*. at 467; *see also Bruen*, 597 U.S. at 24. It is incumbent upon the court to apply "the appropriate analysis . . . when considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692.

IV.    **Analysis**

Mr. Gonzalez raises several arguments in support of his Motion in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). First, he contends that the possession prong of § 922(g)(1) exceeds Congress's Commerce Clause powers. Def's. Mot. 1. Second, he contends that § 922(g)(1) is unconstitutional under the Second Amendment, both facially and as applied to him. *Id*. He specifically contends that "[t]he Government cannot 'carry the burden' of proving that the possession prong is consistent with history and tradition." *Id.* at 9. The Government disagrees and asserts that "[*Diaz* ] forecloses both of those arguments in . . . [its] favor." Gov.'s Resp. 1-2. Therefore, the Government tailors its argument to the "as applied" challenge with several means of support based on the *Bruen* framework.

A.   **Section 922(g)(1) Is Constitutional "As Applied" to Defendant.**

"For the purposes of assessing [Mr. Gonzalez's] predicate offenses under § 922(g)(1), [the court] may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.' " *Diaz*, 116 F.4th at 467 (citing § 922(g)(1)). Thus, the court focuses primarily on Mr. Gonzalez's predicate offenses. These drug-related felonies, as listed in the Motion, include a

conviction for manufacturing and delivery of a controlled substance, and two counts of possession of a controlled substance. The court notes, however, that Mr. Gonzalez has a previous conviction for a Class A misdemeanor, namely, "Assault Caus[ing] Bodily Injury Family Violence," which is highly probative of his dangerous behavior. The court reviews Defendant's predicate offenses *and* his criminal history as a whole to determine whether § 922(g)(1) is constitutional as it applies to him and whether he is a threat to the public.

1. Section 922(g)(1) Is Constitutional as Applied to Defendant's Predicate Offenses.

In addressing the plain text of the Second Amendment framework, Defendant cites law review articles and cases to reinforce his argument that historical laws for disarming felons were, generally, nonexistent during the ratification periods of the Second and Fourteenth Amendments, 1791 and 1868, respectively. Def.'s Mot. 9-10. He argues—despite knowing he is a convicted felon—that § 922(g)(1) infringes on his Second Amendment right because he is disqualified from possessing a firearm, although he is a member of "the people." *Id.* at 9. Moreover, Mr. Gonzalez contends that the Government cannot carry its burden of offering an analogous historical regulation to § 922(g)(1), and, therefore, the statute is unconstitutional as applied to him. *Id.* at 10. Specifically, Defendant requests that the court follow the rule in *Contreras* for the historical inquiry of § 922(g)(1). *Id.* at 8. (citing *United States v. Contreras*, 125 F.4th 725, 731 (5th Cir. 2025)). The panel in *Contreras* stated, "the *Bruen* inquiry, [as articulated in *Diaz*,] requires not only showing that someone convicted of *any felony* was punished in a comparable way but that someone convicted of an *analogous felony* was punished in a comparable way." *Id.* at 10 (quoting *Contreras,* 125 F.4th at 731) (emphasis added)).

The Government counters and argues that our Nation's history confirms § 922(g)(1)'s constitutionality when applied to Mr. Gonzalez. Gov.'s Resp. 6. In essence, the Government first

argues that trafficking in illicit goods, historically, like counterfeits, holds relevant similarity to trafficking in illegal narcotics. *Id*. at 8. It cites the promulgation of historic laws that demonstrate *how* state and federal lawmakers punished those persons convicted of harboring and trafficking contraband. *See id*. at 7 (citing 6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, page 130 (1819) (1748 law) (punishing knowing receipt of a stolen horse with death); An Act to Establish the Post Office and Post Roads within the United States, § 17, 1 Stat. 232, 237 (1792) (punishing mail theft with death); *see also* An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 112-15 (1790) (making it a felony to forge or counterfeit a public security); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785- 1788) at 664-65 (1886) (1788 law) (punishing counterfeiting with death); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 260-61 (1886) (1786 law) (punishing counterfeiting bills of credit with estate forfeiture); and 9 William Waller Hening, Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature 302 (1821) (1777 law) (imposing estate forfeiture on anyone convicted of forging, counterfeiting, or knowingly presenting for payment a wide range of forged documents)).

The Government's Founding-era analogues evidence that the Nation's historical tradition supports severe punishment for those persons whose crimes involved not only stealing or creating illicit goods but also those crimes involving persons knowingly receiving, possessing, or trafficking in such contraband. Gov.'s Resp. 8. As the Government demonstrated earlier in the historical analogue, the punishment for theft, forgery, and counterfeits resulted in either death or estate forfeiture. *Id*.

The Government contends that these historical punishments subsume the modern-day punishment of disarmament, which renders *how* to achieve the goal of § 922(g)(1) comparably burdensome and permissible given the Nation's tradition. *See id*. Moreover, the Government contends that the burden is comparably justified, as well. Gov.'s Resp 7-8. The Government summarizes that our modern-day legislators' reasons for prohibiting firearm possession by felons are relevantly similar to the historic lawmakers' reasons for capital punishment and estate forfeiture. *Id*. at 8. By citing *Diaz*, 116 F.4th at 469, the Government contends that the lawmakers, both today and in history, intended to "permanently punish[] offenders as a result of their serious crime." *Id*.

Despite the Defendant's contentions, the *Rahimi* Court held that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 692. Moreover, *Contreras* does not require a "historical twin," only a "well-established and representative historical analogue" for a modern firearm regulation to pass constitutional muster. 125 F.4th at 729-30. Mr. Gonzalez undermines his position by citing Fifth Circuit cases that validate the revocation of firearms under § 922(g). Def.'s Mot. 8.

Because modern circumstances differ from history, the court must inquire not only *why* and *how* the prohibition burdens the Second Amendment right, but also whether the context of the burden is relevantly similar. The court determines whether § 922(g)(1), as applied to Mr. Gonzalez's predicate offenses for drug-related felonies, "fits comfortably" with our Nation's historical tradition of firearm regulation. *Diaz,* 116 F.4th at 464 (citation omitted).

The court is convinced that the Government's historical analogue has a comparable burden and comparable justification substantiating its decision to apply § 922(g)(1) to Mr. Gonzalez. Specifically, *how* and *why* stolen goods and forged negotiable instruments in the marketplace—

punishable by death or estate forfeiture—affirmatively exhibit *relevant similarity* to Mr. Gonzalez's predicate conviction of trafficking in illegal narcotics—punishable by permanent revocation of his right to a firearm. Further, the court is persuaded by the Government's argument that the creation, possession, or distribution of illicit goods is an analogous felony to manufacturing and delivery of illegal narcotics in modern day. *See* Gov.'s Resp. 8. Additionally, the Government has provided sufficient evidence demonstrating *how* the crimes, in history and today, coincide in punishment. Historical estate forfeiture is an appropriate comparison to contemporary permanent disarmament.

Additionally, the court agrees with the Government that the *why* informing their historical analogue—deterrence, retribution, and pertinence—shares a comparable justification with § 922(g)(1) "to deter violence and lawlessness." *Diaz*, 116 F.4th at 469 ("The precursor to § 922(g)(1), in turn, was enacted to 'bar possession of a firearm from persons whose prior behaviors have established their violent tendencies." (internal quotation marks omitted) (citing 114 CONG. REC. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana))). Thus, the court determines that the Government's analogies are satisfactory, and it has met its burden. The Nation's historical traditions against trafficking in contraband and modern prohibitions against trafficking in illegal narcotics are relevantly similar and employ comparable burdens and justifications that uphold firearm regulations under § 922(g)(1).

2. <u>Disarming Mr. Gonzalez Is also Consistent with the Government's Ability to Disarm Dangerous People.</u>

Second, Defendant does not present an argument that he is not dangerous. Doc. 20. The Government, however, contends that, "[d]isarming . . . [Mr. Gonzalez] is also consistent with the [G]overnment's ability to disarm dangerous people." Gov.'s Mot. 9. (citing *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (quoting *Kanter*, 919 F.3d at 451 (Barrett, J.,

Memorandum Opinion and Order – Page 11

dissenting)). As previously noted, Defendant has three felony convictions for drug-related crimes, including manufacturing and distributing illegal narcotics. Thus, the court may review his criminal history as a whole to determine whether he is a threat to the greater public. The court finds that Mr. Gonzalez's record demonstrates that he has a significant history of endangering the public.

Mr. Gonzalez's most violent criminal act is a conviction in 2019 for Assault Caus[ing] Bodily Injury Family Violence, a Class A misdemeanor. This conviction is a serious offense which "contains a finding that [Defendant] poses a credible threat to the physical safety of an intimate partner . . . ." *Rahimi*, 602 U.S. at 690. It follows that laws to protect others from domestic violence align with our Nation's historical tradition of surety and going armed laws, which were meant to "mitigate demonstrated threats of physical violence." *Id*. at 698.

Furthermore, Mr. Gonzalez's predicate offenses for drug trafficking, though nonviolent, are considered a threat to public safety. The court finds that the interrelationship between drug trafficking, drug possession, and firearms typically leads to dangerous outcomes in the community. *Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination."); *see also United States v. Martinez,* 808 F.2d 1050, 1057 (5th Cir. 1987) ("[F]irearms are 'tools of the trade' of those engaged in illegal drug activities."); *United States v. Cooper*, 979 F.3d 1084, 1090 (5th Cir. 2020) (citation and quotation marks omitted). Therefore, Congress may rightfully disarm Defendant as the courts have previously deemed him a threat to the public. The "common sense" result and this Nation's historical tradition further support the permanent disarmament of Mr. Gonzalez under § 922(g)(1) for his violent and dangerous offenses. *Rahimi*, 602 U.S. at 698.

3.  <u>The Government May Disarm Mr. Gonzalez Because He Was on Bond.</u>

Third, the Government contends that our Nation's history has long established a tradition of disarming those on bond. Gov.'s Resp. 13 (citing *United States v. Quiroz*, 125 F.4th 713 (5th Cir. 2025). Furthermore, the Government argues that the court should deny Defendant's Motion, as he was under indictment for four felony offenses involving drugs and firearms when the authorities arrested him. *Id.* at 1.

The Government "has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974) (citing cases). "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citations omitted). Because it is the Government, not the court or Defendant, that chooses whom and when to prosecute, it is incumbent upon the Government to ensure that all relevant charges are included in an indictment. Because the Government did not charge Mr. Gonzalez pursuant to 18 U.S.C. § 922(n), the court will not address its argument, as it is not before the court.

Thus, after careful review of the applicable law and for the reasons herein explained, the court **rejects** Defendant's "as applied" argument that § 922(g)(1) is inconsistent with this Nation's traditions and is, therefore, unconstitutional.

**B.  Section 922(g)(1) Is Constitutional on Its Face.**

Mr. Gonzalez recognizes that his facial challenge against the Second Amendment is also foreclosed. Def.'s Mot. 6, n.3. To prevail, "the Government need only demonstrate that [§ 922(g)(1)] is constitutional in some of its applications." *Rahimi*, 602 U.S. at 693. The Fifth Circuit has foreclosed facial challenges to § 922(g)(1) constitutional challenges. *See Diaz*, 116 F.4th at 472 (holding that Section 922(g)(1) is constitutional facially because the statute is constitutional

in his particular case.). Additionally, Defendant fails to show that "no set of circumstances" exists in which this law can be applied without violating the Second Amendment. *See Bucklew v. Precythe*, 587 U.S. 119 (2019). The Government need not justify its reasoning with historical analysis because, as explained earlier, the statute is constitutional as applied to Mr. Gonzalez. Defendant's facial argument is therefore foreclosed.

### C. This Court Is Bound by Circuit Precedent.

Even if the court were inclined to deviate from precedent, which it *does not* do, *Bruen* has done little to change the outcome of a § 922(g)(1) claim. Nothing in the Court's recent caselaw has unequivocally overruled its decision in *Heller*, which permits restrictions on firearm use for felons. *See United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018) (the Fifth Circuit held that the Court's decision "must unequivocally overrule prior precedent[.]"(alteration in original)).

Further, Fifth Circuit precedent has foreclosed Mr. Gonzalez's challenges. In *Diaz*, for the first time since *Bruen*, the Fifth Circuit applied the historical inquiry as required by *Bruen* in analyzing the constitutionality of § 922(g)(1). *Diaz*, 116 F.4th at 467. The panel held that permanently disarming Diaz fit within the tradition of regulating firearms. *Id*. at 472. Similarly, Mr. Gonzalez's applied challenge fails because, as stated earlier, permanent disarmament for the crimes he committed is supported by historical analogues, and thus, his challenge is foreclosed. For the reasons stated, Defendant's arguments fail because the court is bound by precedent.

### D. Section 922(g)(1) Under the Commerce Clause Is Foreclosed.

Defendant's Commerce Clause challenge is foreclosed. Doc. 20. The Fifth Circuit has consistently rejected Commerce Clause arguments. *See*, e.g., *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013); *United States v. Nichols*, 2022 WL 5401942, at *1 (5th Cir. Oct. 6, 2022)

(per curiam), *cert. denied*, 143 S. Ct. 827 (2023); *United States v. Curry*, 125 F.4th 733, 736 (5th Cir. 2025). Defendant's argument fails, and the court **denies** his Motion.

V.     **Conclusion**

Because the text and history support the disarmament of felons, the court **concludes** that 18 U.S.C. § 922(g)(1) is constitutional both as applied to Defendant and on its face. Further, the court **concludes** that Mr. Gonzalez's Commerce Clause challenge is foreclosed by precedent. Accordingly, the court **denies** Defendant's Motion (Doc. 20), and it will proceed with the disposition of Counts One and Two by way of a plea or trial.

**It is so ordered** this 30th day of July, 2025.

Sam A. Lindsay
United States District Judge